## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **HARRY WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0545-CVE-JFJ** |
| | ) | |
| **IC BUS OF OKLAHOMA, LLC,** | ) | |
| **previously named as Tulsa Bus Plant,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Opening Brief in Support (Dkt. ## 53, 54). Plaintiff Harry Wilson, proceeding pro se, alleges an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA), under two separate theories. He argues that he was required to interview twice for a position as a group leader (GL), and he claims that his employment was ultimately terminated because of his age. Defendant IC Bus of Oklahoma, LLC (IC Bus) argues that plaintiff was actually awarded the GL position, and participating in a second interview is not an adverse employment action for the purpose of an ADEA claim. As to plaintiff's termination, IC Bus asserts that plaintiff and three younger employees were terminated after an investigation revealed that the employees had violated IC Bus' sexual harassment policy, and there is no evidence that IC Bus' stated reason for terminating plaintiff's employment was pretextual.

# I.

IC Bus manufactures school buses at a plant located in Tulsa, Oklahoma, and Harry Wilson was employed as a general technician at the plant since April 2016.  Dkt. # 54-1, at 1; Dkt. # 54-2, at 4.  A general technician is an hourly employee who performs manufacturing work associated with building school buses and, during the time period relevant to this case, plaintiff was working in the plywood group.  Dkt. # 54-1 at 1-2.  Wilson's supervisor was Antonio Smith.  Dkt. # 54-2, at 16.  Wilson was 57 years old when he was hired in 2016.  When Wilson was hired, he received and reviewed IC Bus' code of conduct, equal employment opportunity, and sexual harassment policies, and IC Bus made Wilson aware of the procedures for investigating complaints of sexual harassment.  Dkt. # 54-2, at 5-6; Dkt. # 54-4.  IC Bus had an internal policy requiring that any employee who was subjected to or had witnessed sexual harassment or any conduct prohibited by company policy to immediately report such conduct to IC Bus.  Dkt. # 54-2, at 9-10.

On July 10, 2018, IC Bus posted an opening for a GL position in Department 220 - Lining, and Smith was listed as the team leader for Department 220 - Lining.  Dkt. # 54-10, at 1.  The job posting states that a GL is responsible for ensuring that the department meets its daily production goals and for "[c]oordinating with the Team Leader to improve the departmental area."  Id.  The GL is also required to "[r]eport to Team Leader any issues or concerns of the department," but the GL is not considered a management level employee.  Id.  Wilson applied for the GL position and he was interviewed on July 24, 2018.  Dkt. # 54-2, at 17-18.  Another employee from Wilson's department, Adrian Jamarillo, also applied for the GL position.  Id. at 22.  The interview consisted of a series of questions from the interview panel, and the candidates' responses were scored by the panel.  Id. at 19.  The interview panel consisted of Eddie Enberg, Wes McMillan, Kelly Hicks, Billy Chapman,

Micki Snyder, and Josh Roark. Dkt. # 54-1, at 2. Wilson testified at his deposition that the GL position was not awarded to any of the candidates, because they had applied for the wrong position. Dkt. # 54-2, at 20. IC Bus made a second posting for a GL position and Wilson applied for the new job opening. Id. at 21. On August 6, 2018, Wilson interviewed for the second GL position, and he was told by the interview panel that he had already been awarded a GL position. Id. at 22. Wilson claims that the human resources department told the second interview panel to "just test him," even though Wilson had already been awarded a GL position. Id. at 25. Plaintiff was fully compensated for any time away from his regular job during the interviews and he was treated in a professional manner by the interview panels. Id. at 31-32. Jaramillo was also required to interview twice for the GL position, and Wilson claims that Jaramillo was given the answers to the panel's questions before the second interview. Id. at 49-50. Wilson also claims that his supervisor, Smith, commented to another employee that he did not want to work with Wilson, because Wilson was "too old and would not listen to him." Id. at 49. Wilson was awarded a GL position and testified that he received a pay increase for the two paychecks prior to his August 6, 2018 interview. Id. at 28-30.

On December 5, 2018, Dakota Butler made a sexual harassment complaint that Jaramillo had been making "sexual gestures" toward her, and she claimed that Jaramillo had engaged in a range of offensive conduct. Dkt. # 54-13, at 2. Randy Betancourt, an employee in the human resources department, investigated the sexual harassment complaint, and he conducted 15 interviews during the investigation. Dkt. # 54-1, at 4. The investigation led to the discovery of other allegations of improper conduct that had allegedly occurred within the department, and Wilson was accused of engaging in offensive conduct or failing to take action to prevent violations of company rules. Betancourt states that it was standard practice for him to investigate new allegations of misconduct

that arose during an investigation, and the scope of the investigation often expanded as the investigation continued.  Id.

Betancourt's report shows that he was initially investigating Butler's allegations that Jaramillo was engaging in offensive conduct, such as calling her a "two face bitch," making unwanted physical contact, making a rude gesture with a hose, and repeatedly talking about his penis at work. Dkt. # 54-14, at 2.  Butler did not bring these matters to Wilson's attention, but Wilson was aware that something was going on after Jaramillo reported to Wilson that Butler touched his butt. Id.  Butler was discussing her problems concerning Jaramillo at lunch and several co-workers overheard Butler's complaints, and they informed a different GL, Lee Spencer, about Butler's claims. Id.  Spencer immediately brought the claims to the attention of the team leader, Smith, as well as Wilson, and Wilson claimed that he did not know that Butler was being serious.  Id.  Butler claimed that she had reported her concerns to Smith, but Smith did not give her an opportunity to fully explain her claims of sexual harassment and she suspected that her supervisors thought that she was simply trying to get Jaramillo in trouble.  Id. at 3.

Betancourt's investigation confirmed aspects of Butler's complaints about Jaramillo, but Betancourt also learned that Butler and another female employee, Chalonda Bagby, were openly engaging in sexual behavior in the workplace.  Id.  Butler's behavior was making co-workers uncomfortable and complaints were made to Wilson about Butler's behavior, but he did not take any action after receiving the complaints.  Id.  Complaints also surfaced about inappropriate remarks allegedly made by Wilson.  Patty McCombs claimed that she heard Wilson tell a female coworker that he was "going to get you pregnant" and "put one in you," but she did not witness Wilson inappropriately touch any female coworkers.  Id.  Butler claimed that Wilson acted as if he was going

4

to touch her breast on one occasion, and that Jaramillo and Wilson both made "sexual innuendos." Id. at 4.  Araceli Aranda and Itiza Reyna had heard about or observed Butler's and Bagby's behavior, but they claimed that Wilson would not address the issue with Butler or Bagby.  Id. at 5.  Stacy Williams stated that Wilson knew about Jaramillo's improper conduct toward Butler, but Wilson was afraid of Jaramillo and he would not intervene to help Butler.  Id. at 6.

Betancourt interviewed Wilson concerning the allegations about sexually inappropriate conduct in his department, and Wilson denied receiving any complaints about Butler's and Bagby's behavior or seeing anything that caused him concern.  Id. at 7. Wilson recalled that Butler made a complaint to him about Jamarillo's behavior, but he believed that Butler took Jaramillo's conduct "the wrong way" and he did not investigate the matter.  Id. at 7.  However, when Jarmillo made a complaint about Bulter's conduct, he immediately approached Butler to ask if she had inappropriately touched Jaramillo.  Id.  Wilson had a conversation with Butler and Jaramillo and he believed that the matter was settled, but he learned that Butler made a complaint to Spencer.  Id. When Betancourt informed Wilson that co-workers complained about his conduct, Wilson asked for the names of employees making claims about him and he stated that those employees were out to get him.  Id. at 8.  Betancourt refused Wilson's request for the names of employees making allegations about his conduct.  Id.

Betancourt concluded that several employees, including Wilson, had violated IC Bus' code of conduct and sexual harassment policies.  Betancourt recommended that Wilson, Jarmillo, and Bagby be terminated, and he recommended that Butler's temporary job assignment be ended.  Id. at 9-10.  Betancourt's recommendations were approved by the operations manager Shane Anderson, plant manager Rodney Tharp, and human resources manager Larry Goodall.  Dkt. # 54-1, at 5.

Wilson was 59 years old when his employment was terminated.  Id.  Butler and Bagby were 26 years old and Jaramillo was 27 years old.  Id.  Smith was not involved in the decision to terminate Wilson's employment.  Id. at 6.

Wilson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that IC Bus discriminated against him on the basis of his race and age.  Dkt. # 54-15.  The charge does not reference Wilson's application for the GL position and focuses solely on his termination.  Wilson claimed that he was falsely accused of telling a female employee that he "want[ed] to put a baby inside of you," and he alleged that "there had been comments made about me 'to [sic] old for the position.'"  Id.  On October 15, 2019, Wilson filed this case alleging employment discrimination claims based on "age, Title VII."  During his deposition, plaintiff clarified that he was bringing a claim of age discrimination only, and he affirmatively stated that he was not proceeding with a race discrimination claim.  Dkt. # 54-2, at 52.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Plaintiff argues that IC Bus intentionally discriminated against him on the basis of his age as to two discrete acts. First, plaintiff argues that he was required to interview two times for the GL position, even though he had been awarded the position after the first interview. Dkt. # 59, at 5-6. Second, plaintiff claims that IC Bus terminated his employment because of his age, and he argues that there was no evidence supporting allegations that he engaged in acts of sexual harassment. Id. at 10, 13. IC Bus asserts that plaintiff failed to exhaust his claim concerning the GL position and, even if the Court reaches the merits of this claim, interviewing twice for a position that plaintiff ultimately received is not an adverse employment action. As to plaintiff's termination, IC Bus

argues that it honestly believed that plaintiff had violated company policy, and plaintiff cannot establish that the stated reason for terminating his employment was pretextual.

**A.**

IC Bus argues that plaintiff failed to exhaust his claim concerning the GL position and, even if he had, any inconvenience plaintiff may have suffered from a second interview does not rise to the level of an adverse employment action. Dkt. # 54, at 19. Plaintiff makes no response to IC Bus' argument concerning the failure to exhaust administrative remedies, but he claims that Smith did not want plaintiff to receive the GL position and sought to help Jaramillo obtain the position. Dkt. # 59, at 6.

"A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Lincoln v. BNSF Railway Co., 900 F.3d 1166, 1181 (10th Cir. 2018). "The exhaustion rule derives from two principal purposes: '1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance.'" Smith v. Cheyenne Retirement Investors L.P., 904 F.3d 1159, 1164 (10th Cir. 2018) (quoting Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994)). The charge of discrimination "must contain facts concerning the discriminatory and retaliatory actions underlying each claim." Sanderson v. Wyoming Highway Patrol, 976 F.3d 1164, 1170 (10th Cir. 2020).

Plaintiff's EEOC charge states he was hired by IC Bus in March 2016 and he was promoted to the position of supervisor in July 2018. Dkt. # 54-15, at 1. He claims that a female co-worker alleged that plaintiff said that he wanted to "put a baby inside of you," and IC Bus investigated the co-worker's allegation. Id. Betancourt interviewed plaintiff about the allegation and plaintiff

denied making any inappropriate statements.  Id.  Plaintiff claims that there had been comments that he was "to [sic] old for the position" and that he was being "set-up."  Id.  Plaintiff states that his employment was terminated on December 14, 2018, and he claims that IC Bus discriminated against him because of his age.  Id. at 2.

The allegations of plaintiff's EEOC charge would not have put IC Bus or the EEOC on notice that plaintiff was asserting a claim in relation to the GL position, and he has failed to exhaust his age discrimination claim as to this discrete claim of discrimination.   An employment discrimination plaintiff's "claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" Sanderson, 976 F.3d at 1170 (quoting MacKenzie v. City and Cty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005)).  The charge does not even mention that plaintiff interviewed for a GL position, and the focus of plaintiff's allegations is clearly on his termination following an investigation into possible sexual harassment of a female co-worker.  Plaintiff has failed to exhaust his administrative remedies as to his claim that he was required to interview twice for the GL position, and IC Bus' motion for summary judgment is granted as to this claim.[1]

---

[1] The Court also does not find that having to interview twice for the GL position constitutes an adverse employment action.  "Conduct rises to the level of 'adverse employment action' when it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Stinnet v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003).   Actions that merely inconvenience an employee or alter the employee's job responsibilities are not considered adverse employment actions.  Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007).  At most, plaintiff suffered some minor inconvenience from a second interview, but he admits that he was fully compensated for both interviews and he was treated professionally by the interview panels.

**B.**

IC Bus argues that it honestly believed that plaintiff had violated the company's code of conduct and sexual harassment policy, and plaintiff has no evidence that IC Bus terminated plaintiff's employment because of his age. Plaintiff denies that he failed to report sexual harassment or that he personally engaged in inappropriate behavior, and he claims that Smith did not want to work with plaintiff because of his age.

Plaintiff testified in his deposition that Spencer heard Smith say that plaintiff was "too old" and that he would not listen to Smith, and plaintiff could be arguing that this is direct evidence of discrimination. Dkt. # 59, at 11. "Direct evidence of discrimination demonstrates on its face that the employment decision was reached for discriminatory reasons," and the evidence qualifies as direct evidence of discrimination only if it "proves the existence of a fact in issue without inference or presumption." Fassbender v. Correct Care Solutions, LLC, 890 F.3d 875, 883 (10th Cir. 2018). It is not enough for a plaintiff to show that his supervisor or manager had animosity toward a particular group, but the plaintiff must show that the supervisor actually acted upon those discriminatory beliefs. Id. The Court will view the evidence in a light most favorable to plaintiff and will assume that Smith made a statement suggesting that Smith viewed plaintiff negatively because of his age. The alleged statement by Smith is somewhat vague, and it suggests that Smith viewed plaintiff as a difficult employee because of his age. Smith was not involved in the GL interview process and he had no role in the decision to terminate plaintiff's employment, and plaintiff has not come forward with evidence that Smith's views had any effect on his employment. Therefore, Smith's alleged statement that plaintiff was "too old" and that plaintiff would not listen to Smith is not direct evidence of discrimination.

The Court has determined that plaintiff has no direct evidence of age discrimination and, in reviewing an age discrimination claim based on circumstantial evidence, the Court must apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination.  Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1105 (10th Cir. 2008).  To establish a prima facie case of age discrimination, a plaintiff must show: (1) that he is within the protected age group; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) he was treated less favorably than others not in the protected class. Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1279 (10th Cir. 2010).  If the plaintiff meets his burden, the employer must "come forward with some legitimate, non-discriminatory reason for the adverse employment action."  Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1195 (10th Cir. 2008).  If the employer produces a legitimate, non-discriminatory reason for its decision, the burden shifts to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004).  The mixed-motive analysis established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), does not apply to claims under the ADEA, and a plaintiff asserting an age discrimination claim under the ADEA retains the "burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."  Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 177 (2009). The Tenth Circuit has found that Gross was consistent with existing Tenth Circuit precedent, and a plaintiff asserting an ADEA claim has the burden to prove that "age was the factor that made a difference," even if age was not the sole motivating factor for an employer's decision.  Jones, 617 F.3d at 1277.

IC Bus does not make any argument concerning plaintiff's <u>prima facie</u> case of age discrimination, and its arguments are focused the pretext aspect of the burden shifting analysis.  The Court will assume for the purpose of this Opinion and Order that plaintiff can establish a <u>prima facie</u> case of age discrimination.  At the second stage of the <u>McDonnell Douglas</u> analysis, the burden shifts to defendant to come forward with a legitimate, non-discriminatory reason for its actions.  "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the [action]; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." <u>EEOC v. Flasher Co., Inc.</u>, 986 F.2d 1312, 1316 (10th Cir. 1992).  The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." <u>Zamora v. Elite Logistics, Inc.</u>, 478 F.3d 1160, 1165 (10th Cir. 2007).  IC Bus states that it honestly believed that plaintiff had violated its sexual harassment policy and its code of conduct, and this belief was supported by a thorough investigation in which multiple employees provided evidence that plaintiff engaged in improper conduct or failed to report improper conduct.  Although plaintiff claims that defendant's stated reason was not the true reason for his termination, defendant has come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment and the burden shifts to plaintiff to show that this reason is pretextual.  <u>Plotke v. White</u>, 405 F.3d 1092,1099 (10th Cir. 2005); <u>Salguero v. City of Clovis</u>, 366 F.3d 1168, 1176 (10th Cir. 2004).

"A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." <u>Stinnett v. Safeway, Inc.</u>, 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting <u>Rea v. Martin Marietta Corp.</u>, 29 F.3d 1450, 1455 (10th Cir. 1994)).  A plaintiff typically attempts

12

to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988). In the context of an age discrimination claim, the burden of persuasion remains with plaintiff at all times to show that age was the but-for cause of plaintiff's termination. Smith v. City of Allentown, 589 F.3d 684, 691 (10th Cir. 2009).

Plaintiff argues that no formal complaint of sexual harassment was ever filed against him, and he claims that he denied the allegations of misconduct made by his co-workers. Dkt. # 59, at 14. IC Bus relies on the "honest belief" doctrine, which emphasizes that the relevant inquiry for a court is not "whether the employer's reasons were wise, fair, or correct," but "whether the employer honestly believed its reasons and acted in good faith upon them." Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1118-19 (10th Cir. 2007). As the Tenth Circuit has explained, the honest belief doctrine does "not eviscerate the third prong (i.e. pretext)," but it simply "establishes the context in which an employee may test the plausibility or coherency of the reasons supposedly underlying that honest belief with the aim of demonstrating that employer's belief may not actually be honest." Dewitt v. Southwestern Bell Telephone Co., 845 F.3d 1299, 1311 (10th Cir. 2017).

In this case, IC Bus conducted an extensive investigation into allegations of workplace misconduct and learned that plaintiff had either failed to report sexual harassment or had engaged in such conduct himself. Betancourt interviewed witnesses and gave plaintiff an opportunity to

explain his side of the story, but Betancourt determined that the employment of plaintiff, Jamarillo, Bagby, and Butler should be terminated.  Butler and Bagby were 26 years old and Jamarillo was 27 years old, and there is nothing about the terminations suggesting that older workers were being targeted for job termination.  The Court's focus is on whether the employer's investigation was fair and the employee was given a reasonable opportunity to rebut allegations of misconduct, rather than the plaintiff's subjective feelings about the outcome of the investigation.  Id. at 1314-15.  The evidence shows that Betancourt conducted a thorough investigation into alleged sexual harassment in plaintiff's department and Betancourt gave plaintiff an opportunity to respond to the allegations against him.  Construing the evidence in favor of plaintiff, he has denied that he engaged in misconduct and he claims that Smith made a statement that he did not want to work with plaintiff because of his age.  The focus of the Court's inquiry is on the reasonableness of the investigation, not the correctness of the outcome, and plaintiff's denials are not relevant to the pretext analysis.  As to Smith's statement, there is no evidence that Smith was involved in the decision to terminate plaintiff's employment and Smith's alleged statement has no tendency to undercut the honesty of IC Bus' belief for the stated reason for plaintiff's termination.  The Court finds that plaintiff has not come forward with evidence tending to show that defendant's legitimate, non-discriminatory reason for terminating his employment was pretextual, and defendant is entitled to summary judgment on plaintiff's age discrimination claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Opening Brief in Support (Dkt. ## 53, 54) is **granted**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine to Exclude Certain Evidence and Brief in Support (Dkt. # 56) is **moot**.

**DATED** this 5th day of May, 2021.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

15